# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# 3:17-CV-00518

| | |
|---|---|
| CAROL HAZEL, ) | |
| ) | |
| Plaintiff, ) | MEMORANDUM OF LAW IN |
| ) | SUPPORT OF PLAINTIFFS' |
| v. ) | OPPOSITION TO DEFENDANT'S |
| ) | MOTION TO DISMISS |
| CALDWELL COUNTY ) | |
| SCHOOLS, CALDWELL ) | |
| COUNTY BOARD OF ) | |
| EDUCATION; ) | |
| ) | |
| Defendants. | |

Plaintiff Carol Hazel (Plaintiff) by and through undersigned counsel, hereby submits her Memorandum of Law in Opposition to defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTS

Plaintiff, a lifelong educator, was hired by defendant as an Exceptional Children's Teacher in August, 2015. Plaintiff, who suffered from significant hearing loss herself, had devoted much of her professional life to educating students with various physical and mental disabilities. In previous employment teaching students, plaintiff had requested and been approved for reasonable accommodations to allow her to teach, such as an FM Listening System and a

Sound Neckloop. In fact, plaintiff provided defendant with a letter directed to her former employer that described in great detail her disability, the limitations it created in a teaching environment, and the reasonable accommodations that would allow her to manage the disability and enable her to perform the essential functions of her job. The disability and limitations were the same working for Caldwell County Schools as they had been, and the reasonable accommodations detailed in the letter would have served the same purpose.

Despite providing her employer with a roadmap for accommodating her disability, defendant consistently refused to either engage in the interactive process or provide reasonable accommodations. In fact, after repeated requests finally led to defendant sending an audiologist to observe plaintiff, defendant still neglected to adhere to plaintiff's request for reasonable accommodations, and, indeed, failed to follow up on that observation in any way. Though the hearing aids she wore helped plaintiff, various difficulties of the classroom setting, such as multiple speakers and significant background noise, necessitated additional devices when teaching. Plaintiff, though she struggled without the aid of the reasonable accommodations she had requested, nevertheless continued to perform her job duties as well as she could until she went out on leave in February, succumbing to the anxiety and stress that afflicted her, in large part due to the failure of defendant

to accommodate her disability. On February 29, during a meeting with human resources, plaintiff was forced into retirement.

## PROCEDURAL HISTORY

Plaintiff filed her Complaint ("Original Complaint") on June 29, 2017, in Mecklenburg County Superior Court, alleging, *inter alia*, violations of the Americans with Disabilities Act (ADA). Defendant removed the action to this Court on August 28, 2017. On October 5, 2017, defendant filed its Motion to Dismiss and Memorandum of Law in Support of its Motion. On October 26, 2017, plaintiff filed her Amended Complaint according to Rule 15, which allows for the amending of a complaint as a matter of course within 21 days of a "responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). The amendment, including the changing of a party, also relates back when the requirements of Rule 15(c)(1)(C) are satisfied, as they are in the instant case.

## ARGUMENT

### I:  Introduction

In its motion, defendant makes four arguments in asking the court to dismiss plaintiff's claims. Defendant's first and second arguments, in light of plaintiff's Amended Complaint, are, in large part, rendered moot. Though they will be

briefly addressed below, courts have held that one purpose an amended complaint serves under Rule 15 is to "avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised." Fed. R. Civ. P. 15(a) advisory committee's note (2009). The third and fourth arguments are likewise addressed below.

As to defendant's second argument, a motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege facts which, if true, state a claim to relief that is plausible on its face. The recitation of facts "need not be particularly detailed, and the chance of success need not be particularly high. A plaintiff fails to state a claim only when he offers labels and conclusions or formulaically recites the elements of his cause of action." *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 403 (4th cir. 2014).

Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving disputes over facts, a district court must accept as true all of the factual allegations contained in the complaint and draw all inferences in favor of the

4

plaintiff. Accordingly, Rule 12(b)(6) does not permit dismissals based on skepticism of a complaint's factual allegations: a "complaint may therefore survive a motion to dismiss even if it appears that a recovery is very remote and unlikely." *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 526, (E.D. Va. 2015). As the court states in *Twombly,* "a complaint should not be dismissed for failure to state claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 550 US 544, 127 S Ct 1955, (2007). Clearly, under the above standards, and in light of plaintiff's Amended Complaint, plaintiff more than meets her burden under the relevant pleading standards.

## II:  Legal Entity

Defendant's first argument in its Motion is that plaintiff's claims should be dismissed for listing "Caldwell County Schools" as defendant rather than "Caldwell County Board of Education." Notwithstanding defendant's contentions, plaintiff notes that "Caldwell County Schools" has held itself out as plaintiff's employer on various paperwork, including w-2 forms issued pursuant to the Internal Revenue Act, and in all ways has acted as plaintiff's employer for purposes of the ADA.

5

In light of N.C. Gen. Stat. § 115C-40 however, which designates the "Caldwell County Board of Education" as the body corporate designated to prosecute and defend suits against Caldwell County Schools, plaintiff filed her Amended Complaint on October 26, 2017, adding Caldwell County Board of Education as a party. Plaintiff filed her Amended Complaint in accordance with Rule 15, and in light of plaintiff's amendment, defendant's argument as to the legal entity is thus rendered moot.

**II: Failure to State a Claim**

Defendant next argues that plaintiff fails to state a claim for discrimination or retaliation under the ADA. Under any applicable standard, defendant's argument is without merit. Though plaintiff maintains her Original Complaint clearly and unequivocally stated a claim and constituted a well-pleaded complaint, her Amended Complaint, filed as a matter of right as noted above, should render defendant's arguments moot.

As defendant notes, in order to state a claim for relief under the ADA, plaintiff must show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position…; and (4) that the [employer] refused to make such accommodations."

6

*Wilson v. Dollar Gen. Corp.,* 717 F.3d 337, 345 (4th Cir. 2013). Plaintiff clearly meets her burden of including facts that support each element of her claim.

Plaintiff alleges facts that reveal plaintiff is disabled within the meaning of the ADA, which defines a disability as a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102. The Amended Complaint states that plaintiff "suffers from significant hearing loss," and "wears a hearing aid in each ear," but even with the aids, while teaching, the hearing loss nevertheless "substantially impacts her ability to hear and understand speakers, and constitutes a substantial limitation of her major life activity of hearing" and "cannot be accommodated by hearing aids alone." Compl. ¶ 7. Additionally, the Amended Complaint alleges that she "sent reports of her hearing loss and prior recommendations for accommodations to the appropriate parties." Compl. ¶ 9.

The Amended Complaint goes on to illustrate the disability by describing the difficulties of teaching *without* the accommodations, and notes that on two occasions an audiologist observed her in the classroom, and after the second observance, recommended that she be transferred to another school in the system. Compl. ¶ 10-14. Finally, the Amended Complaint states that "plaintiff was a qualified individual with a disability who, because of a physical impairment,

7

Case 3:17-cv-00518-GCM   Document 14   Filed 11/02/17   Page 7 of 16

suffers a substantial limitation of her life activity of hearing." Compl. ¶ 22. Under any standard, plaintiff has pled with more than enough specificity and factual allegations to assert her qualifying disability under the ADA.

Next, defendant argues that plaintiff fails to include allegations of what accommodations she requested or that they were reasonable. That contention is likewise inaccurate. Plaintiff specifically pled facts to support both points in her Original Complaint, and elaborated on them in her Amended Complaint. Specifically, she notes that plaintiff's disability can be "reasonably accommodated…with devices such as an FM Listening System, and a Sound Neckloop. Additionally, various modifications to her interaction with students and others could be implemented that would enable her to distinguish and understand sounds more efficiently." Compl. ¶ 8. Plaintiff goes on to note that, upon information and belief, defendant possessed those inexpensive devices for students, and could potentially have provided them to plaintiff at no cost. Compl. ¶ 11. Plaintiff likewise asserts that, as an educator with 38 years of experience, she had "successfully managed the disability for many years prior to working for defendant." Compl. ¶ 8. Clearly, at a minimum, the facts alleged in the Amended Complaint form the well-plead basis of each element of the claim.

Further, plaintiff explicitly lays out the detailed chronology of the refusal of defendant to engage in the interactive process. As defendant apparently concedes, its reliance on *Wilson v. Dollar Gen. Corp.,* 717 F.3d 337 (4th Cir. 2013) is misplaced if plaintiff has identified reasonable accommodations, which she clearly has. Plaintiff asserts that she provided "information concerning her disability and the accommodations she required" at the time of her hire. Compl. ¶ 9. She further sent "reports of her hearing loss and prior recommendations to…the principal, the director for students with disabilities, and the audiologist for Caldwell County Schools." Compl. ¶ 9. Finally, in "January, 2016, plaintiff again requested accommodations, as teaching in the 'open' classroom setting was becoming more and more difficult." Compl. ¶ 12.

Despite plaintiff's numerous attempts to engage in the interactive process, as stated in the complaint, defendant consistently refused. The entirety of defendant's "participation" in the process was, apparently, sending an audiologist to observe plaintiff on two occasions—once in September, and once in January. As stated, nothing ever came of either visit, and plaintiff's numerous and consistent requests went otherwise entirely ignored. The end result of that failure to engage was plaintiff going out on leave for one week at the end of February, 2016. When she met with human resources upon her return, defendant refused to grant short-term

9

medical leave, refused to provide accommodations, and told her the only option was retirement. Compl. ¶ 15. With no choice, plaintiff involuntarily retired. Compl. ¶ 15.

The law clearly protects plaintiff under the above facts. In *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 Fed. Appx. 314 (4th Cir. 2011), a case directly on point with the instant one, the Fourth Circuit found that a school's unwillingness to engage in the interactive process and provide reasonable accommodations for a school counselor (which consisted of a transfer) violated the ADA when it led to her premature retirement. Other cases unequivocally echo the same holding. *See Johnson v. Shalala,* 991 F.2d 126, 132 (4th Cir. 1993) (complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge); *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099 (6th Cir. 2008) (employer denied a stool for defendant to sit on, employee was denied a reasonable accommodation, a reasonable jury could find that defendants knew that the employee's working conditions would become intolerable); *Chavez v. Waterford Sch. Dist.*, 720 F. Supp. 2d 845 (E.D. Mich. 2010) (middle school teacher refused accommodations for speech disability, employer should have known employee may quit absent the accommodations); *Sensing v. Outback Steakhouse*, 575 F.3d

10

145 (1st Cir. 2009) (hostess denied accommodations over extended period, court found constructive discharge); *Willinghan v. Town of Stonington*, 847 F. Supp. 2d 164 (D. Me. 2012) (refusal to accommodate town manager led to his resignation upon request; resignation could constitute constructive discharge because of link to accommodation request). Thus, cases from across the country and from several circuits are uniform in protecting plaintiff under the above facts. Indeed, the pertinent caselaw supports plaintiff on either front—whether she was constructively discharged through a repeated failure to accommodate, or whether she was forced into retirement explicitly by being given no alternative option. Plaintiff has alleged both, when either would suffice.

Defendant also alleges that plaintiff fails to plead sufficient facts in support of her retaliation claim, and that argument likewise mischaracterizes the law in regards to plaintiff's claims. As noted above, plaintiff, in her Amended Complaint, clearly alleges facts to support each element of her claims. As to the retaliation claim, she has explicitly pled facts to support involuntary retirement and constructive discharge, and her pleadings clearly establish a causal link between her protected activity—her repeated requests for reasonable accommodations—and the adverse employment action—her forced retirement. Specifically, plaintiff alleges that she was a 38-year educator who "fulfilled the requirements of her job"

11

despite the refusal of defendant to accommodate her reasonable requests. Compl. ¶ 6, 13. As pled in her Amended Complaint, she endured months of continued refusals to accommodate, despite those requests. Compl. ¶ 11-13. After taking leave for one week, plaintiff again went to human resources, detailed her issues again, and was again denied her request. Then, immediately after that denial, plaintiff was forced into retirement. Not only do those facts allege a *potential* causal link between the protected activity and the adverse employment action, which is all that is required at this stage, those facts suggest that the *only* credible rationale for the forced retirement was plaintiff's repeated accommodation requests. That conclusion, especially at this stage, and in light of the close temporal proximity, is consistent with pertinent caselaw, and defendant's motion should be denied as to plaintiff's retaliation claim. *See Lopez v. Kempthorne,* 684 F. Supp. 2d 827 (S.D. Tx. 2010).

In conclusion, by any measure, plaintiff's Amended Complaint forms a well pleaded complaint. As the *Iqbal* court states, a claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Defendant ignores the plain factual assertions

12

pled in the complaint, and attempts to hold plaintiff to a standard inappropriate to the pleadings stage, and thus, the motion should be denied.

### III: Wrongful Discharge Claim

Defendant next argues that plaintiff's claim of wrongful discharge should be dismissed. For two critical reasons, defendant's motion should be denied. First, even if one assumes plaintiff is on a contract, an allegation in defendant's motion but one that lies outside the pleadings, she remains an at-will employee. Critically, even if the Court were to consider a theoretical agreement, it is clear it would still contemplate "employment at will," though it may provide some parameters for that employment. For example, N.C. Gen. Stat. § 115C- 325.4 provides no less than 15 specific grounds for when a teacher may be terminated despite the presence of a contract. Further, many, if not most, newer teachers operate on a year-year contract that may be renewed or not renewed upon expiration of each term. Thus, even considering the agreement – which the Court should not – the employment here was terminable at will by either party, was not for an extended term, and provided numerous scenarios that would "justify" a termination. As such, a wrongful discharge claim may be pursued.

13

Next, the court should deny defendant's motion to dismiss the wrongful discharge claim to be consistent with many other states who have done the same. As the Missouri Supreme Court stated, a

> discharge is not 'wrongful' because it violates the contractual terms of employment. A discharge is 'wrongful' because it is based on the employer's attempt to condition employment on the violation of public policy expressed in applicable constitutional, statutory, or regulatory provisions.

*Keveny v. Missouri Military Academy.,* 304 S.W.3d 98, 102-03 (MO 2010). The court goes on to note that distinct remedies are ignored, the deterrent effect is lost, and the logic is inconsistent when wrongful discharge claims are barred by contracts. *Id.* at 102-03. Likewise, in the present case, defendant's failure to abide by the ADA and subsequent retaliation against plaintiff was not "wrongful" because of any contract—it was wrongful because defendant's actions violated the law. Accordingly, defendant's motion should be denied.

**IV: Punitive Damages**

Plaintiff respectfully defers to the court on her punitive damages claim.

## CONCLUSION

For the reasons stated above, plaintiff respectfully requests the court deny each of defendant's Motions to Dismiss.

This the 2nd day of November, 2017.

/s/R. Michael Elliot
R. Michael Elliot (42806)
Elliot Morgan Parsonage, PLLC
300 E. Kingston Ave, Suite 200
Charlotte, NC  28203
Phone: (704) 707-3705
E-Mail: michaelelliot@emplawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 2nd, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/R. Michael Elliot
R. Michael Elliot (42806)
Elliot Morgan Parsonage, PLLC
300 E. Kingston Ave, Suite 200
Charlotte, NC  28203
Phone: (704) 707-3705
E-Mail: michaelelliot@emplawfirm.com